**In the**
**UNITED STATES DISTRICT COURT DISTRICT OF COLUMBIA**

| | |
|---|---|
| Adaeze Nwosu )<br>*Plaintiff,* )<br>3100 S St NW, )<br>Washington, DC 20007 )<br> )<br> )<br>v. )<br> )<br> )<br>Hewlett Packard Enterprise Company )<br> )<br>*Defendant.* )<br>c/o  Registered Agent )<br>The Corporation Trust Company, )<br>Corporation Trust Center 1209 Orange St, )<br>Wilmington, De,  19801, 19801 | Case: 1:24-cv-00064<br>Assigned To : Reyes, Ana C.<br>Assign. Date : 1/8/2024<br>Description: Pro se Gen. Civ. (F–Deck)<br><br>Case No. |

Date 4 January 2024

RECEIVED
JAN - 8 2024
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# COMPLAINT FOR ANTI-TRUST VIOLATIONS, UNJUST ENRICHMENT, UNFAIR BUSINESS PRACTICES AND FRAUD

1. <u>Background</u>

Plaintiff, Ms Nwosu, brings the civil action against the defendant, Hewlett -Packard Enterprise Company (herein, "HP" or "Hewlett-Packard") for treble damages and compensatory damages under common law theories of fraud and unjust enrichment, anti-trust violations and unfair business practices. The defendant is incorporated in Delaware and Headquartered at 1701 E Mossy Oaks RD Spring, TX 77389-1913. Ms Nwosu is an international businesswoman, running companies with global operations. In 2023, Ms Nwosu, sought to expand into the print industry, and had concluded sales negotiations of Hewlett – Packard printing equipment in October 2023, with an authorized South African Hewlett – Packard agent. However, Ms Nwosu's plans were abruptly truncated when Hewlett Packard representatives insisted, she must purchase equipment from their preferred Hewlett Packard agent in Nigeria. Upon investigation, Ms Nwosu discovered that this company had an unfair monopoly of the West African Market, permitted and unopposed by the defendant, and even when the plaintiff complained to HP Executives, no remedies were sought.

2. <u>Basis of Jurisdiction in Federal Court - Violation of Federal Statutes</u>

This case involves violation of federal statutes and common law doctrines, including violation of federal Anti-Trust laws: Sherman Act and amended by the Clayton Antitrust Act, the former codified in 15 U.S.C. §§ 1-38 and the latter codified at 15 U.S.C. 12-2

3. <u>Jurisdiction - Venue</u>

Venue is proper because pursuant to 13-423, the District of Columbia can exert personal jurisdiction over the defendant based on the defendants or its agent's conduct: "A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's transacting any business in the District of Columbia;

    (2) contracting to supply services in the District of Columbia;

    (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;"

Ms Nwosu is a resident of the District of Columbia and the defendant has at least eight distinct agent enterprises of resellers of business consumers. The defendant has many more resellers for home products for individuals, and pursuant to § 13-422 and § 13-423 (1) (2) (4) (5) of the District of Columbia Long Arm Statute, this US District Court for the District of Columbia may exert personal jurisdiction over the Defendant, a foreign corporation, because HP has a long enduring and significant relationship with the District of Columbia. For example, the defendant advertises to consumers to purchase and transact within the District of Columbia. The US District Court for the District of Columbia can exercise personal jurisdiction over the defendant on common law theories of unjust enrichment, anti trust laws, fraud and unfair business practices.

4. Statement of Claim & Legal Background
    4.1. The plaintiff claims thus that the defendant was unjustly enriched via violations of Sherman laws and statutes and because it permitted allowed only one company CIS BURO to be the authorized dealer of Mid-Large Latex Format printers in English speaking West Africa. The plaintiff was left powerless has her attempts to prevent the continued unjust enrichment and unfair business practices were trumped.
    4.2. The doctrine of unjust enrichment applies 'when a person retains a benefit, which in justice and equity belongs to another.'" *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016) (quoting *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005)). "The elements of an unjust enrichment claim are '(1) the plaintiff conferred a benefit on the defendant or [the plaintiff incurs losses as a result of the defendants actions; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust.'" *Falconi-Sachs*, 142 A.2d at 556. In this case the defendant's market structure and insistence she must buy from one company alone, which has a monopoly and at the expense of having a readily enforceable aftersales contract, caused her to incur losses in revenue, travel expenses, from being unable to procure equipment and set up her print factory.
    4.3. The plaintiff claims the defendant's acts of unjust enrichment were permitted due to its violation of federal Anti-Trust laws (Sherman Act and amended by the Clayton Antitrust Act ), the former codified in 15 U.S.C. §§ 1-38 and codified at 15 U.S.C. 12-27, respectfully; and as well as DC State Laws on Anti Trust formation and Unfair Competition formation, 15 U.S. Code § 3.

4.4. That plaintiff claims that the defendant was unjustly enriched because it prohibited sellers of Mid-Large Latex Format printers in other African countries, like South Africa sell into West Africa. The defendant willfully made South Africa a separate geographic market, though it is on the African continent, and not a part of its European and Middle Eastern Market (EMEA), to which other African countries belong.

4.5. The plaintiff claims that due to the restricted trade and permissive monopolization of Large Format Latex printers in English Speaking West Africa by the defendant's agent, she suffered harm and losses by being unable to avail of products and services with other HP dealers, with whom she had already established a relationship history, built trust, and whose court jurisdictions were more efficient in resolving after sales and contract breaches, than the local market in Nigeria.

4.6. Specifically, under Section 15 U.S. Code § 3, Trusts in Territories or District of Columbia illegal, whereby

   a) Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any Territory of the United States or of the District of Columbia, or in restraint of trade or commerce between any such Territory and another, or between any such Territory or Territories and any State or States or the District of Columbia, <u>or with foreign nations</u>, or between the District of Columbia and any State or States or foreign nations, is declared illegal.

   b) Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce in any Territory of the United States or of the District of Columbia, or between any such Territory and another, or between any such Territory or Territories and any State or States or the District of Columbia, or with foreign nations, or between the District of Columbia, and any State or States or foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

4.7. The plaintiff further claims that owing to violations of DC-Code § 28–3904 (f), (f-1), (g) Unfair or deceptive trade practices, she was unable to procure HP's goods from a South African vendor, whom she had a prior relationship and business history with,

and instead repeatedly coerced into trying to purchase from a different vendor in the continent who was not even African, but rather middle Eastern owned. CIS BURO's corporate office is located in Lebanon.

4.8. South Africa is the only other English speaking and free market trading country whose distributors/agents/resellers of the defendant's mid – Large scale Latex Printers, are not Middle – Eastern, or not owned by CIS-BURO or any of their affiliates.

4.9. The HP executives in the Middle East, including Mr Ernest Azzam, with whom the plaintiff communicated, failed to mention to Ms Nwosu that the South African market was not listed as part of the defendant's African market on its website or as part of the defendant's "Europe, Middle East, and Africa trade region. Accordingly, it shall be a violation of DC-Code § 28–3904 for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including to:

> (g) disparage the goods, services, or business of another by false or misleading representations of material facts;
>
> (f) fail to state a material fact if such failure tends to mislead;
>
> (f-1) use innuendo or ambiguity as to a material fact, which has a tendency to mislead.

5. <u>Statement of Facts</u>

In support of its claims, the plaintiff alleges upon information and beliefs as follows:

5.1. From May 23 – May 26th 2023, Ms. Nwosu attended the Federation of European Screen Printing Associations (FESPA) Exposition, in Munich Germany, with the intention of making contact with appropriate representatives to procure print equipment and set up a printing press in Nigeria, her home country.

5.2. During that period at the aforementioned exposition, she met with various HP representatives and saw demos of the defendants printing machinery. After speaking with a HP representative from Europe, she was referred to the closest representative for Nigeria, Mr Navin Jeenwallal, whose South African registered company, Mid-Comp was a HP contracted agent.

5.3. Ms Nwosu understood Mid Comp was an authorized HP sale agent for B2B equipment.

5.4. From June until October 2023, Ms Nwosu engaged in sales negotiations and product procurement discussions with Mr Jeenwallal, demonstrating full intention to purchase and acquire from Mid-Comp.

5.5. On October 5th 2023, the plaintiff visited the Mid-Comp office in South Africa for a demo and to finalize equipment orders.

5.6. Throughout these months and the discussions, Mid-Comp employees never mentioned they were unauthorized to sell HP equipment in Nigeria, nor did they mention they had any restrictions to sell to the plaintiff. Mid-Comp was unaware of any geographic restrictions set forth by the defendant.

5.7. Ms Nwosu had requested an HP print sample book alongside her equipment, for which Mr Jeenwallal mentioned he would need to get in touch with HP regional sales to place an order on her behalf. After finalizing an invoice for Ms Nwosu, Mr Jeenwallal wrote to the HP regional sales manager.

5.8. On October 6th 2023, Mr Jeenwallal informed Ms Nwosu that he had been informed by Mr Jean-Michel Terzian, who later introduced himself to Ms Nwosu on October 11th 2023 as a [manager] for the Latex Large Format Printing at HP for Central Africa.

5.9. Mr Terzian mentioned to Ms Nwosu she must buy from "our local authorized partner in Lagos, CIS BURO LTD, Mr. Elie Saab."

5.10. Ms Nwosu explained to Mr Terzian and other HP managers and executives that she had already made extensive progress with the South African company Mid-Comp, and did not wish to begin all over. Mid-Comp advised there was nothing they could do about

the situation and that the restriction to sell to her in Nigeria caught them unawares, as they had previously sold products to Nigerian clients.

5.11. Additionally, Ms Nwosu explained to the HP managers responsible for the Middle East and Africa, that the Nigerian legal system would create gross inefficiencies in enforcing after sales contract and warranty obligations by the defendant, because of its bottle necks, delays, back logs, and thus she did not feel comfortable spending over $600,000 to procure equipment if the after-sales contract jurisdiction were to be enforced in Nigeria.

5.12. Given that the HP executives mentioned that the reason for the trade restriction was that it would be easier to offer warranty services and after sales support if the equipment were procured locally in Nigeria, Ms Nwosu proposed several alternatives to ensure she could have a post sales waranty agreement for purchases of such a significant value in a jurisdiction that could efficiently resolve contractual disputes or after sales warranty issues. However, all propositions by Ms Nwosu to multiple HP managers and executives failed.

5.13. Specifically, Ms Nwosu has spoken to Mr Ernest Azzam, HP's Regional Business Manager, Large Format Printing for Middle East, Mediterranean and Africa

5.14. Additionally, In November 2023, as a last resort, Ms Nwosu reached out to Ms Marie Myers in Houston, Texas, who is the Chief Financial Officer of the defendant, explaining her conundrum and the unjust consequences of the undue burden and consequences being placed on her by its trade and agent's restrictions. Ms Myers rerouted Ms Nwosu's complaint to customer service, who eventually insisted she must purchase from CIS-BURO.

5.15. Aftewards, Ms Nwosu found that although other African countries were listed under the regional market of Africa, South Africa was questionably excluded.

5.16. Ms Nwosu realized that she was being unduly influenced to purchase from CIS-BURO because they had a monopoly of mid - large format printers in Nigeria and English-speaking West Africa.

5.17. It further shows that HP unjustly carved and apportioned their markets within Africa in a way that favored / unjustly enriched CIS BURO, a Middle Eastern owned company, and that the defendant had further restricted trade by willfully excluding South Africa, the nearest proximate reseller of large format printers.

5.18. As a result of this monopoly, and unjust market allocation leading to unjust enrichment, undue coercion, and provide unfair or deceptive trade practices, Ms Nwosu was unable to procure print equipment for her business and has suffered material losses.

6. <u>Claims For Relief</u>
   6.1. Count I – Violation of the Sherman Act / 15 U.S. Code § 3 AntiTrust Laws
   6.2. Count II – Violation of the Clayton Act
   6.3. Count III – Unjust Enrichment
   6.4. Count IV – Unfair Business Practices

7. <u>Prayer For Relief</u>

WHEREFORE, the plaintiff demands judgment against Defendant as follows:

   7.1. Three times the damages which the plaintiff sustained because of Defendant's violation of Federal Antitrust laws plus interest and costs to bring the instant civil action,
   7.2. Compensatory damages in the amount of forfeited revenue and forfeited revenue in the time it takes to resolve this lawsuit,
   7.3. Civil Penalties for the Violation of Federal and State Laws,
   7.4. Costs sustained by the Plaintiff in this action as provided under Federal and State laws.
   7.5. Damages sustained by the plaintiff under the common law theory of fraud plus punitive damages, interest, costs, and expenses, in an amount to be established at trial;
   7.6. Damages sustained by the Plaintiff under the common law theory of unjust enrichment plus interest, costs, and expenses, in an amount to be established at trial.
   7.7. For total damages in excess of 5 million dollars ($5,000,000).
   7.8. For such other relief at law and at equity as the Court deems just and reasonable.

8. Certification & Signature

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case- related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

SIGNATURE  *[signature]*

DATE  4 January 2023

NAME